IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN AND JEFFREY ROCKE, : | |
| : | |
| Plaintiffs, : | |
| v. : | CIVIL ACTION |
| : | NO. 12-3372 |
| : | |
| PEBBLE BEACH COMPANY, : | |
| : | |
| Defendant. : | |
| : | |
| : | |
| : | |

**MEMORANDUM OPINION**

**Tucker, C. J.**                                                                                       **April 28, 2014**

       Presently before the Court are Defendant Pebble Beach Company's Motion to Dismiss (Doc. 16), Plaintiffs Susan and Jeffrey Rocke's Response in Opposition (Doc. 18), Defendant's Reply in Further Support (Doc. 22), and Plaintiffs' Sur-Reply (Doc. 23).[1]  Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below, Defendant's Motion to Dismiss will be granted.

       **I.**       **FACTUAL AND PROCEDURAL BACKGROUND**

       Plaintiffs Susan and Jeffrey Rocke (collectively, "Plaintiffs" or the "Rockes") initiated this action against Defendant Pebble Beach Company ("Pebble Beach") by filing their Complaint on June 14, 2012. The allegations in the Complaint concern a slip-and-fall incident at The Spa at Pebble Beach on September 3, 2011.  The Spa is part of Pebble Beach Resorts and is located at 2700 17 Mile Drive, Pebble Beach, California.  Plaintiffs are residents of Phoenixville, Pennsylvania.  Pebble Beach owns and operates The Spa at Pebble Beach, and is a California

---

[1] Pursuant to court order, all briefings and exhibits have been filed under seal. (See Doc. 17.)

1

general partnership formed in accordance with the laws of the State of California.

The Complaint alleges that Susan Rocke was in the process of going for a massage at The Spa at the direction of one of Pebble Beach's employees. (Compl. ¶ 8.) Mrs. Rocke was wearing spa slippers that were provided by a Pebble Beach employee. (Id. at ¶9.) As Mrs. Rocke walked toward The Spa, she tripped on an allegedly defective threshold and fell. (Id.) Mrs. Rocke struck her head on a nearby post, causing a concussion. (Id.; see also Rocke Aff. ¶¶ 3-4.) Since this time, Mrs. Rocke has sought and received treatment for her injuries from thirteen different medical providers in Pennsylvania. (Rocke Aff. ¶4.)

The Complaint further alleges:

> At all times material hereto, Pebble Beach was and is in the business of operating a luxury golf and spa report known as The Lodge at Pebble Beach and solicits business from Pennsylvania residents including the Plaintiffs by direct mailings to the Plaintiffs and others in Pennsylvania, by [e]-mail solicitations to the Plaintiffs and others in Pennsylvania, by advertising in national golf magazines that Plaintiffs and others received in Pennsylvania and by soliciting the business of Pennsylvania citizens via its internet website.

(Compl. ¶ 4.) As a result of these promotional activities, Plaintiffs aver that they chose to visit Pebble Beach with two other couples. (Rocke Aff. ¶ 8.) Rick Johnson ("Mr. Johnson"), a member of Plaintiffs' party, placed a telephone call to Pebble Beach and reserved three rooms. (Rocke Aff. ¶ 8.; Goldman Aff. 7/25/12 ¶12.) Mr. Johnson provided his home address in Ohio to Lauren Hicks (a reservation agent for Pebble Beach) when he made the reservation. (Goldman Aff. 7/25/12 ¶13.) Mr. Johnson indicated that he obtained the number to make the telephone call by "googling" Pebble Beach. (Goldman Aff. 7/25/12 ¶16.)

Pebble Beach previously filed a motion to dismiss for lack of personal jurisdiction on July 26, 2012. On December 18, 2012, this Court granted the motion to dismiss, finding there was nothing in the record to suggest that Pennsylvania had either general or specific jurisdiction over Pebble Beach. Plaintiffs appealed. In a non-precedential opinion dated October 10, 2013,

the Third Circuit Court of Appeals reversed. The Third Circuit found that "Pebble Beach's contacts with Pennsylvania, as alleged by the Rockes, are insufficient to establish general jurisdiction." Rocke v. Pebble Beach Co., 541 F. App'x 208, 210 (3d Cir. 2013). Accordingly, the Third Circuit concluded "[t]here [was] no basis, on this record, to conclude that Pebble Beach's contacts with Pennsylvania are sufficiently continuous and substantial to establish general jurisdiction." Id. at 211. The Third Circuit further concluded that based on Pebble Beach's contacts with Pennsylvania, as alleged by the Plaintiffs, specific jurisdiction also was not established. Id. Thus, the Third Circuit held: "Since Pebble Beach's contacts fail to establish specific jurisdiction, the District Court properly concluded that there was a lack of personal jurisdiction based on the record before it." Id. at 212. The Third Circuit, however, found that this Court had abused its discretion in not permitting Plaintiffs to conduct jurisdictional discovery. Accordingly, the Third Circuit vacated the Order granting the motion to dismiss, reversed this Court's Order denying jurisdictional discovery, and remanded to allow the Plaintiffs to engage in jurisdictional discovery. Id. at 213.

     Jurisdictional discovery is now complete. As part of jurisdictional discovery, Plaintiffs conducted the depositions of two of Pebble Beach's corporate designees, Ann McAuliffe ("Ms. McAuliffe") and Neal Barry Hotelling ("Mr. Hotelling") on October 22, 2013. Pebble Beach also provided responses to Plaintiffs' discovery requests. As jurisdictional discovery is now complete, Pebble Beach has renewed its Motion to Dismiss on the grounds of lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

## II.     STANDARD OF REVIEW

A motion under Fed. R. Civ. P. 12(b)(2) "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d Cir.1984).  When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  The plaintiff meets this burden by making a prima facie showing of "sufficient contacts between the defendant and the forum state." Id.

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir.1986) (citing Fed.R.Civ.P. 4(e)). Pennsylvania's long arm statute authorizes Pennsylvania courts to exercise personal jurisdiction over non-residents to the "fullest extent allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). The Due Process Clause of the United States Constitution permits personal jurisdiction so long as the non-resident defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

## III.     DISCUSSION

### A. General Jurisdiction

Plaintiffs claim there is sufficient evidence to demonstrate that Pebble Beach is subject to general jurisdiction in Pennsylvania.[2]  General jurisdiction requires a plaintiff to establish that the defendant has maintained "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  If a defendant's contacts with the forum state are continuous and systematic, a court may exercise general jurisdiction whether or not those contacts are related to the plaintiff's cause of action. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 334 (3d Cir. 2009).  To establish general jurisdiction the plaintiff "must show significantly more than mere minimum contacts" with the forum state. Provident, 819 F.2d at 437 (internal citations omitted).  The facts required to establish general jurisdiction must be "extensive and persuasive."  Reliance Steel Prods. v. Watson. Ess. Marshall, 675 F.2d 587, 589 (3d Cir. 1982); see also Surgical Laser Techs., Inc. v. C.R. Bard, Inc., 921 F.Supp. 281, 284 (E.D.Pa.1996) (noting that the standard for general jurisdiction is "not an easy one to meet.")  Additionally, the defendant's contacts with the forum should be "viewed cumulatively, as opposed to in isolation," to determine whether they support the exercise of personal jurisdiction. Metcalfe, 566 F.3d at 335.

With respect to corporate defendants, some of the objective criteria a court may consider in determining whether general jurisdiction exists includes: (1) whether the defendant is incorporated or licensed to do business in the state; (2) whether the defendant has ever filed any tax returns in the state; (3) whether the defendant files administrative reports with any agency or department of the state; (4) whether the defendant regularly purchases products or supplies

---

[2] Because it is clear Plaintiffs are not claiming specific jurisdiction, the Court limits its discussion to general jurisdiction only. (See Pls.' Resp. Opp'n Mot. Dismiss 4) ("**Plaintiffs do not claim specific jurisdiction**.") (emphasis in original).

5

within the state for use in its business outside the state; (5) whether the defendant owns land or property within the state; (6) whether the defendant advertises in the state; and (7) whether the defendant maintains an agent in the state. Verona v. U.S. Bancorp, CIV.A. 08-4104, 2009 WL 466450 (E.D. Pa. Feb. 23, 2009) (internal citations omitted).

Here, five of the seven criteria outlined in Verona clearly weigh in favor of finding that general jurisdiction does not exist. The uncontroverted testimony of Ms. McAulliffe and Diane Goldman, Esq. (Pebble Beach's Associate General Counsel) is as follows. Pebble Beach is not licensed or incorporated to do business in Pennsylvania. (Goldman Aff. 7/25/12 ¶6.) Pebble Beach has never filed tax returns or been required to file tax returns in Pennsylvania. (Id. at ¶5.) Pebble Beach does not file administrative reports with any an agency or department within Pennsylvania. (Id. at ¶8.) Pebble Beach does not have physical land or property in Pennsylvania. (Id. at ¶4.) Pebble Beach does not maintain an agent within Pennsylvania. (Id. at ¶ 7.) Additionally, Pebble Beach has never had a sales manager who was located in Pennsylvania. Ms. McAuliffe, who has been Pebble Beach's Sales Manager of the Northeast (U.S.) for the past twenty years, has never been to Pennsylvania for business trips, nor have any employees who work for her. In addition, neither Ms. McAuliffe nor her employees have attended trade shows in Pennsylvania. (See McAuliffe Dep. 9:18-12-7, 23:1-26:9.)

Much of Plaintiffs' arguments and evidence in favor of exercising general jurisdiction focuses on the fourth and sixth factors outlined in Verona— i.e., whether Pebble Beach regularly purchases products or supplies within Pennsylvania for use in its business outside the state, and whether Pebble Beach advertises in the state. With respect to these considerations, Plaintiffs' advance five arguments as to why general jurisdiction may be asserted over Pebble Beach. The Court examines each of these arguments in turn, and concludes that the exercise of general jurisdiction over Pebble Beach would be improper.

1. Relationship with DeadSolid Simulations, Inc.

First, Plaintiffs contend that general jurisdiction is proper based on Pebble Beach's business relationship with DeadSolid Simulations, Inc. ("DeadSolid"), which is located in Pittson, Pennsylvania. On January 15, 2004, Pebble Beach entered into a "Golf Licensing Agreement" with DeadSolid whereby DeadSolid would design and develop golf simulator products for use in retail establishments, golf clubs, and homes. (Pls.' Ex. 3.) These include full size simulators for sale to indoor golf facilities, as well as custom home simulators. The Agreement was amended on January 15, 2006, and according to Plaintiffs terminated in 2012. (Id.)

The Court finds this prior business relationship is insufficient to exercise general jurisdiction. Simply because Pebble Beach entered into a licensing agreement with company that happened to be located in Pennsylvania does not mean that Pebble Beach itself has a continuous and systematic presence in Pennsylvania. See Goodsport Mgmt. (USA), Inc. v. Special Events, Inc., 71 F.Supp.2d 477, 481 (E.D.Pa.1999) (holding that a company's single contract to provide hospitality services in Pennsylvania did not establish general jurisdiction with Pennsylvania, where the company had no representatives or agents in Pennsylvania, did not own or lease any real property there, did not have a telephone number, office, bank account or mailing address there, did not advertise there, and the contract only accounted for only 0.6% of total annual gross sales). Further, Plaintiffs ignore the fact that the territorial scope of the Agreement is expressly "worldwide," and not in any way directed at or focused on Pennsylvania. (Pls.' Ex. 3 at 1.) Additionally, the Agreement is expressly governed by the laws of State of California, not Pennsylvania. (Id. at 7.) This is further evidence that Pebble Beach had no intention of submitting itself to jurisdiction in Pennsylvania when it opted to contract with a Pennsylvania company.

2. <u>Pennsylvania Businesses and Citizens with whom Pebble Beach Does Business</u>

Secondly, Plaintiffs argue Pebble Beach has continuously and systematically conducted a portion of its business activities with other Pennsylvania entities. Pebble Beach's arguments here focus on "Pennsylvania entities to whom [Pebble Beach] directed payments to purchase services or products in Pennsylvania in the last several years," "entities whom [Pebble Beach] identified as 'strategic accounts' in Pennsylvania," and "Pennsylvania travel agents with whom Pebble Beach Company has done business….during the past [five] years." (Pls.' Resp. Opp'n Mot. Dismiss 6-7.) The Court finds none of these business activities amount to continuous and systematic contacts with Pennsylvania. Pebble Beach's accounts payable in Pennsylvania, as identified by Mr. Hotelling at his deposition and in Pebble Beach's discovery responses, represent less than 0.5% of Pebble Beach's entire accounts payable list. (Goldman Aff. 1/16/14 ¶6; Pls.' Ex. 4 ¶22).[3] Such a negligible amount of business in Pennsylvania is neither extensive nor persuasive. See <u>Modern Mailers, Inc. v. Johnson & Quin, Inc.</u>, 844 F. Supp. 1048, 1054 (E.D. Pa. 1994) (defendant's sales of less than .5% to Pennsylvania deemed not substantial); <u>Romann v. Geissenberger Mfg. Corp.</u>, 865 F. Supp. 255, 261 (E.D. Pa. 1994) (defendant's sales of 2-4% "hardly reflective of the type of extensive and pervasive contact required by the *in personam* jurisdiction standard.") (quotations omitted); <u>Allied Leather Corp. v. Altama Delta Corp.</u>, 785 F.Supp. 494, 499-500 (M.D.Pa.1992) (defendant's sales of 1% in Pennsylvania insufficient); <u>Derman v. Wilair Servs., Inc.</u>, 404 Pa.Super. 136, 590 A.2d 317, <u>appeal denied</u>, 529 Pa. 621, 600 A.2d 537 (1991) (finding no substantial and continuous business even though

---

[3] Pebble Beach's business information is proprietary, and was therefore filed under seal. Accordingly, the Court generally cites to the exhibit but does not identify the names of the accounts payable, the number of accounts payable, or the exact percentage these Pennsylvania accounts payable represent relative to Pebble Beach's entire accounts payable list.

defendant did 1.5% of its business with Pennsylvania residents). Similarly, the "strategic accounts" referenced by Ms. McAuliffe at her deposition and in Pebble Beach's discovery responses account for less than 0.5% of the total organizations in Pebble Beach's sales database. (Goldman Aff. 1/16/14 ¶4; Pls.' Ex. 4 ¶1, Pls.' Ex. 5 ¶1.)[4]

With respect to Pennsylvania travel agents with whom Pebble Beach has done business in the past five years, Plaintiffs' evidence here is based entirely of quarterly newsletters that have been mailed to these agents by Pebble Beach. Plaintiffs assert that "[b]y regularly soliciting numerous travel agents in Pennsylvania to send travelers to Pebble Beach Resort, [Pebble Beach] demonstrated an intent to enter into a continuous and mutually beneficial business relationship with travel agents for the purpose of selling accommodations and activity packages to Pennsylvania residents." (Pls.' Resp. Opp'n Mot. Dismiss 7.) The evidence does not support this argument. There is nothing to suggest that Pebble Beach specifically targets Pennsylvania residents or companies with its promotional mailings. The travel agents who, since the fall of 2010, have received these quarterly newsletters from Pebble Beach are all agents who under unspecified circumstances have done business with Pebble Beach in the past. Pebble Beach sends the same generic quarterly newsletter to all national and international travel agents on its mailing list. Pennsylvania travel agents account for less than 0.5% of all the travel agents who receive these newsletters. (Goldman Aff. 1/16/14 ¶ 3; Pls. Ex. 4 ¶¶2-3.) This is insufficient evidence of continuous and systematic contact with Pennsylvania. See e.g., O'Connor v. Sandy Lane Hotel Co., Ltd., CIV.A. 04-2436, 2005 WL 994617 at *3 (E.D. Pa. Apr. 28, 2005) ("Because [d]efendant's newsletter is sent only to a targeted clientele of individuals who have

---

[4] Pebble Beach's business information is proprietary, and was therefore filed under seal. Accordingly, the Court generally cites to the exhibits but does not identify the strategic accounts, the number of strategic accounts, or the exact percentage these Pennsylvania strategic accounts represent relative to Pebble Beach's entire sales database.

independently sought out information, this limited interaction with Pennsylvania residents is insufficient to establish general jurisdiction.") (internal citations omitted).

Plaintiffs then argue that "Pebble Beach directs its [n]ewsletters and other promotional materials to Pennsylvania citizens via email and hard copy publications." (Pls.' Resp. Opp'n Mot. Dismiss 7.)  In support of this contention, Plaintiffs cite the affidavit of Plaintiff Susan Rocke, who stated her belief that over the last several years she and her husband have received mailings and emails from Pebble Beach, and that Pebble Beach regularly advertises in magazines sent to Plaintiffs and other Pennsylvania residents. (Rocke Aff. ¶ 8.)  Susan Rocke states that it was "through these marketing materials" that the Rockes and the two other couples in their party made their decision to visit Pebble Beach. (Id.)

Pebble Beach does not appear to dispute that its advertisements were what precipitated the Rockes desiring to visit Pebble Beach.  Rather, Pebble Beach contends that "Plaintiffs' reliance on one mailing, one national magazine advertisement, one email solicited by Plaintiff, and a few voicemails occurring after Plaintiffs' reservation with Pebble Beach Resorts had been made do no rise to the level of general jurisdiction." (Def.'s Mot. Dismiss 10-11.)  Although the record is unclear as to how many mailings or emails Plaintiffs received, the Court agrees with Pebble Beach that these sporadic contacts are insufficient to establish a general jurisdiction. See Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 542 (3d Cir. 1985) (advertising in the New York Times and Wall Street Journal, "non-Pennsylvania newspapers with international circulations," did not constitute "continuous and substantial" contacts with Pennsylvania) (citing Reliance Steel Products, 675 F.2d at 589).  The record contains no evidence as to how or why the Rockes received a single direct mailing from Pebble Beach. (Rocke Aff., Ex. 2.)  Further, the solitary email from Pebble Beach to Jeffrey Rocke that Plaintiffs' now cite makes clear that Jeffrey Rocke received the email because he chose to subscribe to Pebble Beach's mailing list,

and that he could unsubscribe if he no longer wished to receive these emails. (Rocke Aff., Ex. 3.)[5] Additionally, the advertisements Pebble Beach placed in Golf Magazine, a national publication to which Plaintiffs elected to subscribe, are also insufficient. (Rocke Aff., Ex. 4.) Thus, nothing in the record suggests that Pebble Beach specifically targets residents of Pennsylvania with its email and print advertisements.  To the contrary, all of this evidence indicates it was the Rockes who initiated contact with Pebble Beach.

3. Sale of Pebble Beach Licensed Products in Pennsylvania

Plaintiffs next argue that Pebble Beach "engaged in a continuous licensing program by which numerous Pebble Beach products were marketed and sold in Pennsylvania to grow its brand 'as part of its overall marketing plan.'" (Pls.' Resp. Opp'n Mot. Dismiss 8.) (citing Hotelling Dep. 63:1-64:12.)  These products include Pebble Beach apparel, golf simulators, video games, books, luggage, umbrellas, and artwork.  Specifically, Plaintiffs point to the fact that Pebble Beach apparel and other products are offered for purchase in Pennsylvania at Nordstrom, Dick's Sporting Goods, Costco, and PGA Tour shops; Pebble Beach books are sold at Barnes & Noble in Philadelphia, Pennsylvania; Pebble Beach video games "are sold worldwide by any retailer that sells video games, including those in Pennsylvania"; and Pebble Beach golf simulators, such as the simulators sold by DeadSolid, "can be easily found by simply 'surfing the internet'" (Id.)  Plaintiffs' evidence here appears to consist of receipts for various products actually purchased in Philadelphia, and "printouts" of internet search results evidencing that these products can be purchased in Pennsylvania. (See Pls.' Exs. 7, 8, 9, 10, 11, 12, 13 ,14, 15, 16, 17.)

---

[5] Moreover, the email is dated July 10, 2012, after the Plaintiffs visited Pebble Beach, after the incident in question, and after Plaintiffs filed their Complaint in this matter.

11

This evidence is also insufficient. An out-of-state entity does not subject itself to general jurisdiction simply by providing its products for sale in a retail establishment in the forum state — especially when the retail establishment is itself a large, out-of-state retailer like the businesses Plaintiffs have cited. See Simplicity, Inc. v. MTS Products, Inc., CIV.A. 05-3008, 2006 WL 924993, at *4 (E.D. Pa. Apr. 6, 2006) (Sanchez, J.) (declining to exercise general jurisdiction where the record illustrated that the products the defendant sold in Pennsylvania were either delivered outside of Pennsylvania to the plaintiff or to large, out-of-state retail stores like Wal-Mart, Target, and K-Mart, who in turn sold the products in Pennsylvania); see also id. at *4 ("I cannot consider any sales transactions with Wal-Mart, Target and Kmart when determining whether this Court has general jurisdiction over [the defendant] because sales to these retailers did not occur in Pennsylvania, and [the defendant] did not directly ship goods sold to these retailers into Pennsylvania.")[6] Aside from the previously-addressed simulators manufactured by DeadSolid, there has been no evidence that any of these products were manufactured in Pennsylvania, shipped directly by Pebble Beach into Pennsylvania, or that the transactions for the sale of these products to the retailers occurred in Pennsylvania.

Moreover, to the extent Pebble Beach "benefited" — either financially or in terms of its products "acquir[ing] valuable secondary meaning and goodwill with the public" (Pls.' Resp. Opp'n Mot. Dismiss 9) — from making its products available for sale in Pennsylvania, this benefit only comes through placing its products into the "stream of commerce." However, stream of commerce theory is only a basis for finding specific jurisdiction. Simeone ex rel. Estate Of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH, 360 F. Supp. 2d 665, 673

---

[6] The Court is unpersuaded by Plaintiffs' attempts to distinguish Simplicity. (Pls.' Resp. Opp'n Mot. Dismiss 12 n.2.) The fact that the cause of action in Simplicity was different from the cause of action here does not undermine the persuasiveness of Judge Sanchez's analysis of the defendant's contacts with Pennsylvania.

(E.D. Pa. 2005) (quotation and internal citations omitted).  Plaintiffs have made clear that they are not asserting specific jurisdiction.

        4.   "Direct" Marketing by Pebble Beach in Pennsylvania

Plaintiffs next aver that Pebble Beach continuously and systematically solicited business from Pennsylvanians by maintaining an interactive website.  The Third Circuit was unconvinced that merely maintaining an interactive website was sufficiently purposeful contact to establish specific jurisdiction. Rocke, 541 F. App'x at 211 ("We have observed that the mere operation of a commercially available web site should not subject the operator to jurisdiction anywhere in the world.") (citing Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 451-52 (3d Cir. 2003)). Plaintiffs, reversing course, now argue general jurisdiction can be based on Pebble Beach's practice of purchasing keyword advertising results (known as "AdWords") from Google.[7] Plaintiffs contend "[t]he intent behind the advertising campaign is to attract customers from around the world, including Pennsylvania, to Pebble Beach Resorts." (Pls.' Resp. Opp'n Mot. Dismiss 10.)

---

[7] See generally ADVERTISE ON GOOGLE, http://www.google.com/adwords/?sourceid=awo&subid=ww-ns-g-awhp_nelsontest3_nel_p&clickid (last visited Apr. 25, 2014).  The Second Circuit explained AdWords as follows:

> AdWords is Google's program through which advertisers purchase terms (or keywords). When entered as a search term, the keyword triggers the appearance of the advertiser's ad and link. An advertiser's purchase of a particular term causes the advertiser's ad and link to be displayed on the user's screen whenever a searcher launches a Google search based on the purchased search term.  Advertisers pay Google based on the number of times Internet users "click" on the advertisement, so as to link to the advertiser's website. For example, using Google's AdWords, Company Y, a company engaged in the business of furnace repair, can cause Google to display its advertisement and link whenever a user of Google launches a search based on the search term, "furnace repair." Company Y can also cause its ad and link to appear whenever a user searches for the term "Company X," a competitor of Company Y in the furnace repair business. Thus, whenever a searcher interested in purchasing furnace repair services from Company X launches a search of the term X (Company X's trademark), an ad and link would appear on the searcher's screen, inviting the searcher to the furnace repair services of X's competitor, Company Y. And if the searcher clicked on Company Y's link, Company Y's website would open on the searcher's screen, and the searcher might be able to order or purchase Company Y's furnace repair services.

Rescuecom Corp. v. Google Inc., 562 F.3d 123, 125-26 (2d Cir. 2009)

13

The flaw in Plaintiffs' argument is inherent in this last statement.  By purchasing AdWords, Pebble Beach (like many other businesses utilizing the same marketing technique) seeks to make itself more visible to *anyone in the world* who searches Goggle using certain keywords or search terms.  Purchasing general AdWords does not render Pebble Beach any more "at home" in Pennsylvania than it would be in any other state or in any other country.  Moreover, Plaintiffs have presented no evidence that Pebble Beach purchased Pennsylvania-specific AdWords in order to solicit Pennsylvania business.[8]  See CollegeSource, Inc. v. AcademyOne, Inc., 99 U.S.P.Q.2d 1672, 2011 WL 3437040 (9th Cir. 2011) (reversing order dismissing case for lack of personal jurisdiction; Pennsylvania defendant subject to specific, though not general, personal jurisdiction in California where defendant allegedly misappropriated material from the website of a California based firm for purposes of direct competition with that firm for California business, and where defendant "used California-specific AdWords and solicited California business by phone, email, and in-person marketing" and where "[i]ts websites include[d] information on California schools and serve[d] registered users who identified themselves as California residents").  Thus, the mere fact that Pennsylvania residents are potentially swept up in the broad ocean of people to whom Pebble Beach is advertising through AdWords is not even direct a contact, much less continuous and systematic one.

        5.    <u>Pebble Beach's Personnel Attended the 2013 U.S. Open at Merion Golf Club in Ardmore, Pennsylvania</u>

Finally, Plaintiffs point out that Pebble Beach' CEO and Executive Vice President of Golf attended the 2013 U.S. Open in Ardmore, Pennsylvania to observe the tournament and get

---

[8] The Court is unpersuaded by Plaintiffs' assertion that searching Google for "Golf Resort for Pennsylvanians in California" returns an advertisement for Pebble Beach Resort and its website. (Pls.' Resp. Opp'n Mot. Dismiss 9; Pls.' Ex. 21.)  It is equally true that searching Google for "Golf Resort for Floridians in California," "Golf Resort for North Carolinians in California," and "Golf Resort for Texans in California" returns advertisements for Pebble Beach and its website.  Similar searches could be performed for each of the 50 states and would possibly return advertisements for Pebble Beach.  But this would still not necessitate the conclusion that Pebble Beach is subject to general jurisdiction in every state in the union.

ideas for how to prepare for their own upcoming tournaments. (Hotelling Dep. 69:4-20.) Plaintiffs concede that this single contact would be insufficient standing alone to establish general jurisdiction, but nonetheless seek to place this visit within the context of Pebble Beach's "stream of commerce activities with business entities throughout the Commonwealth." (Pls.' Resp. Opp'n Mot. Dismiss 10.)  As previously stated, stream of commerce analysis is only relevant to the question of specific jurisdiction, which is not asserted here. Simeone, 360 F. Supp. 2d at 673.  Moreover, as the Third Circuit previously observed, "the proper focus in the specific jurisdiction analysis is on those contacts leading up to and surrounding the accrual of the cause of action. Later events are not considered." Rocke, 541 F. App'x at 212 (citing 16 Moore's Federal Practice—Civil § 108.42 (3d ed.2010)).  Such a "one-off" contact is therefore neither continuous nor systematic nor relevant.

      Based on all the evidence regarding Pebble Beach's contacts with this forum, the Court must find that Pebble Beach does not have a "continuous and systematic" presence in Pennsylvania.  The Court again emphasizes that the burden for establishing general jurisdiction is strenuous. See Snodgrass v. Berklee Coll. of Music, 13-2616, 2014 WL 960898 (7th Cir. Mar. 13, 2014) ("General jurisdiction over an out-of-state corporation may be appropriate when its affiliations with the forum state are so continuous and systematic as to render the corporation essentially at home in that state.") (citing Daimler AG v. Bauman, 134 S.Ct. 746, 754 (2014)); [9] Davis v. PGNI Charles Town Gaming, LLC, No 07–2352, 2007 WL 4553695, at *2 (E.D.Pa. Dec.26, 2007) (holding that "only when the 'continuous corporate operation within a state [is]

---

[9] Both Defendant's Reply and Plaintiffs' Sur-Reply focus on the applicability of the Supreme Court's recent decision in Daimler AG to the facts of this case.  The Court finds that Daimler AG does not affect, one way or the other, its determination that the exercise of general jurisdiction over Pebble Beach would be inappropriate.  Therefore, the Court need not resolve this dispute between the parties.

thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities' may a court assert general jurisdiction over a corporate defendant") (quoting Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir.1993)). "In short, this higher threshold demands contacts with the forum which approximate physical presence." Nationwide Contractor Audit Serv., Inc. v. Nat'l Compliance Mgmt. Serv., Inc., 622 F.Supp.2d 276, 284 (W.D.Pa.2008).

The contacts which Plaintiffs have cited here fall far short of meeting this difficult burden. Quantitatively, Pebble Beach's contacts with Pennsylvania are meager as compared to its overall operations. More importantly, there is nothing to support Plaintiffs' contention that the business Pebble Beach *does* derive from Pennsylvania is the result of any systematic presence, or purposeful targeting or solicitation of this state or its citizens. (See Compl ¶ 4.) The Court remains mindful, nonetheless, "that it is the overall nature of the activity, rather than its quantitative character, that determines whether a Court may have general personal jurisdiction." Romann, 865 F. Supp. at 261; see also Provident, 819 F.2d at 438 (extending general jurisdiction over a California bank which only had .066% of its depositors in Pennsylvania, received .071 % of its deposits from Pennsylvanians, and extended .083% of its outstanding loans to Pennsylvania residents, *but* which also maintained and daily used a continuous "controlled disbursement" account with a Pennsylvania bank) (emphasis added).

Qualitatively, however, there is nothing about the nature of Pebble Beach's contacts with Pennsylvania which is substantial enough to render it essentially "at home" in this forum. Much of the evidence presented by Plaintiffs — the Pennsylvania businesses and citizens with whom Pebble Beach has done business; the indirect sale of Pebble Beach licensed products in Pennsylvania; the generic mailings and emails sent to Pennsylvania residents; the general advertisements placed in a magazine with nationwide circulation — is neither extensive nor

persuasive. These contacts are sporadic, and do not rise above "mere minimum contacts" with the forum state. Provident, 819 F.2d at 437. The Court grants that Pebble Beach's previous contractual relationship with DeadSolid is more significant than these other contacts; however, Plaintiffs have pointed to no case law which suggests a court may exercise general jurisdiction over an out-of-state business simply because that out-of-state business contracts with an in-state business. This is especially true when the underlying contact explicitly states that the agreement shall be governed by the laws of a non-forum state, and the territorial scope of the contract is "worldwide."

Finally, even considering the cumulative effect of these contacts, the Court still finds that exercising general jurisdiction over Pebble Beach would be inappropriate. Metcalfe, 566 F.3d at 335; see also Gehling, 773 F.2d 539 (3d Cir. 1985) (Medical college in Grenada lacked continuous and substantial business relationship with Pennsylvania to permit federal district court in Pennsylvania to exercise personal jurisdiction over college under 42 Pa.C.S.A. § 5301(a)(2)(iii), for diversity claims arising from colleges activities outside of Pennsylvania, even though college had placed advertisements in non-Pennsylvania newspapers circulated throughout Pennsylvania, six percent of college's students came from Pennsylvania, Pennsylvania residents annually paid several hundred thousand dollars of tuition to college, and Pennsylvania college operated joint international program with college.); Nationwide, 622 F. Supp. 2d 276; (Kansas corporation's contacts with Pennsylvania-based customers were not sufficiently extensive and pervasive as to confer general jurisdiction over corporation under Pennsylvania law; corporation had contracts with only four Pennsylvania customers out of its total customer base of 85 customers nationwide [i.e., less than 5% of its customers], those contracts generated no more than 6% of its annual revenues, corporation provided no in-state services through those contracts, its website pages did no more than explain the purpose and benefits of participating in program

and provided information about how to contact the company via telephone or e-mail, and its website was not targeted specifically to Pennsylvania.)

### B. Venue

Because the Court again dismisses the action for lack of personal jurisdiction, the Court need not reach the question of whether venue is proper in the Northern District of California. See 28 U.S.C. § 1391 (A corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question…."). Moreover, the Court notes that Plaintiffs have already filed a civil action in the Northern District of California pertaining to the same underlying slip-and-fall incident. Rocke v. Pebble Beach Co., No. 5:13-cv-029512-PSG (N.D. Cal. filed June 26, 2013). That matter was stayed pending this Court's resolution of the jurisdictional questions in Pennsylvania. Id. at ECF No. 32. The Court having now resolved those questions, Plaintiffs are free to either pursue their case in the Northern District of California, or to appeal this Court's jurisdictional determination.

## IV.   CONCLUSION

For the reasons set forth above, Defendant Pebble Beach's Motion to Dismiss is granted. An appropriate order follows.